**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 25-63-DLB-EBA**

**CHRISTOPHER CARPENTER** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**CHRIS NEWMAN** **DEFENDANT**

* * * * * * * * * * * * * * * *

## I. INTRODUCTION

This matter arises from a traffic stop that ended with Plaintiff Christopher Carpenter fleeing from police and Defendant Officer Christopher Newman firing several shots at Carpenter's vehicle. Carpenter later pled guilty to several criminal charges stemming from the encounter, including resisting arrest. He now brings this action under 42 U.S.C. § 1983, alleging that Newman used excessive force during the stop, along with several claims arising under Kentucky law. Newman moved to dismiss the Complaint. (Doc. # 10). Carpenter responded (Doc. # 18), and Newman replied (Doc. #21). Therefore, the motion is now ripe for review.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2024, Carpenter was stopped by officers with the Grayson Police Department. (Doc. # 1 ¶ 2). According to the Complaint, Newman arrived while the stop was underway, walked to the front of Carpenter's vehicle, drew his firearm, and pointed it directly at Carpenter. (*Id.*). Carpenter alleges that, at that time, he had "committed no

act to resist, threaten, flee or otherwise cause or give the police officers any reason to pull a gun and point it at [him]." (*Id.*).

Carpenter, soon after, began driving away, and Newman fired several shots at his vehicle. (*Id.*); (Doc. # 18 at 4). The bullets struck the vehicle. (Doc. # 1 ¶ 2). Carpenter was later charged with—and pled guilty to—two counts of attempted murder, two counts of wanton endangerment, one count of fleeing or evading police, and one count of resisting arrest. (Doc. # 10-3 at 5).

Carpenter then filed this action against Newman in his individual and official capacities. (*See* Doc. # 1). Although the Complaint invokes the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, Carpenter's allegations center on Newman's alleged use of excessive force during the traffic stop. (*See id.* ¶¶ 2-4). He also asserts claims arising under Kentucky law. (*Id.* ¶¶ 3-4). Newman later moved to dismiss the Complaint. (Doc. # 10).

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In reviewing a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). But the Court need not accept as true a "'[t]hreadbare recital of the elements of a cause of action . . . supported by mere conclusory statements.'" *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original). Nor must it credit "naked assertion[s]" devoid of "further

factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Rather, only "genuine factual allegations" are entitled to a "presumption of truth." *Dakota Girls*, 17 F.4th at 648.

At this stage, the Court's decision "rests primarily upon the allegations of the complaint[.]" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). But the Court can also consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion . . . so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## IV. ANALYSIS

Carpenter's Complaint raises two general categories of claims against Newman. First, Carpenter asserts claims under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights, which he brings against Newman in both his individual and official capacities. Second, Carpenter asserts claims arising under Kentucky law. Newman moves to dismiss both categories of claims.[1]

### A. Section 1983 Claims

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). To state a claim, a plaintiff must allege "the violation of a

[1] Newman also challenges the sufficiency of the summons. (*See* Doc. # 10-1 at 20). Magistrate Judge Atkins, however, granted Carpenter's request to amend the summons. (Doc. # 19). And the executed summons was returned on January 2, 2026. (Doc. # 24). Accordingly, that issue is moot.

right secured by the Constitution and laws of the United States," committed "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### ***1. Individual-Capacity Claims***

Plaintiff invokes the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. But "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, that right arises under the Fourth Amendment. Plaintiff's allegations concern force used during a traffic stop, before any conviction or detention. *See id.* ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is *most properly characterized as one invoking the protections of the Fourth Amendment*[.]") (emphasis added). The Court therefore begins—and, for purposes of Carpenter's excessive-force claim, ends—with the Fourth Amendment.[2]

The next question is what conduct Carpenter challenges as excessive. The Complaint alleges that Newman arrived at the traffic stop, walked to the front of Carpenter's vehicle, drew his firearm, and pointed it directly at Carpenter. (Doc # 1 ¶ 2). Only afterward, per Carpenter, did he begin to drive away, at which point Newman fired

---

[2] In any event, none of the other constitutional provisions invoked in the Complaint supplies a viable basis for Carpenter's excessive-force claim. The Fifth Amendment's Due Process Clause, cited in Carpenter's Response (Doc. #18 at 3), applies to "federal, not state, officials." *Palmer v. Schuette*, 768 F. App'x 422, 427 (6th Cir. 2019). The Eighth Amendment does not apply because Carpenter does not allege that he was a "convicted prisoner[]" at the time of the excessive force. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). And because Carpenter does not allege that he was a prisoner, "his excessive force . . . claims are governed by the Fourth Amendment, rather than the Fourteenth Amendment." *Ward v. Borders*, No. 3:16-CV-393-RGJ-RSE, 2021 WL 4487605, at *6 (W.D. Ky. Sept. 30, 2021). Finally, although the First Amendment protects rights independent of the Fourth Amendment, the Complaint alleges no facts suggesting that Newman's use of force burdened Carpenter's speech, association, or other First Amendment activity.

several shots at his vehicle. (*Id.*). In describing the allegedly excessive force, however, Plaintiff restricts it to the moment Newman brandished his gun: "[s]pecifically, at the time that the Defendant *pulled his gun and began pointing said gun at the Plaintiff*, the Plaintiff had committed no act to resist, threaten, flee[.]" (*Id.* (emphasis added)). And Carpenter's separate assault claim likewise rests on Newman's alleged act of "pointing his gun directly at the Plaintiff." (*Id.* ¶ 4). The Court, then, construes Plaintiff's excessive-force claim as challenging Newman's initial act of drawing and pointing his firearm at Carpenter before Carpenter began to flee.[3]

**a. Fourth Amendment**

Newman argues that Plaintiff's Fourth Amendment claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. # 10-1 at 6). The Court agrees.

"It is well settled under *Heck* that when an individual . . . brings a § 1983 claim against the arresting officer, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (quoting *Heck*, 512 U.S. at 487). The Sixth Circuit has "recognized two circumstances under which an excessive force claim might conflict with a conviction": first, "when the criminal provision makes the lack of excessive force an element of the crime," and second, "when excessive force is an affirmative defense to the crime." *Id.* (internal citations omitted). Under the latter, *Heck*

---

[3] Newman also asks the Court to consider video footage of the encounter. (Doc. #10-1 at 4). But "a complaint's allegations **must** be accepted as true unless the plaintiff's claim hinges upon a fact that is *clearly rebutted* by video evidence." *Konate v. Vander Laan*, No. CV 5:24-154-KKC, 2025 WL 965745, at *3 (E.D. Ky. Mar. 31, 2025) (emphasis in original). That is not the case here. The footage, which appears to come from a nearby surveillance camera, is grainy and does not clearly identify either officer. And, in any case, Newman relies on it principally to show what occurred after Carpenter began driving away. (Doc. #10-1 at 4-5). Carpenter's Complaint, on the other hand, challenges Newman's initial decision to draw the firearm. (Doc. #1 ¶¶ 2, 4).

bars a § 1983 claim, "where the plaintiff's claim could have been asserted in criminal court as an affirmative defense." *Id.* In either circumstance, however, "both the § 1983 claim and the conviction must arise out of the same events." *Id.* at 450.

The second circumstance applies here. Following the incident, Carpenter pled guilty to two counts of Attempted Murder (Ky. Rev. Stat. § 507.020), two counts of Wanton Endangerment (Ky. Rev. Stat. § 508.060), one count of Fleeing and Evading Police (Ky. Rev. Stat. § 520.095), and—importantly here—one count of Resisting Arrest (Ky. Rev. Stat. § 520.090). (Doc. # 10-3 at 5).[4] Carpenter does not dispute these pleas. (*See* Doc. # 18 at 4 ("The Plaintiff acknowledges that he plead guilty to numerous criminal charges[.]")). As explained below, Carpenter's resisting-arrest guilty plea implicates the second circumstance because his excessive force "claim could have been asserted in criminal court as an affirmative defense." *Parvin*, 641 F. App'x at 449.

"In Kentucky, defendants charged with resisting arrest may raise excessive force as an affirmative defense." *Capuano v. Crane*, No. 5:24-CV-P39-JHM, 2025 WL 223778, at *3 (W.D. Ky. Jan. 16, 2025) (citing Ky. Rev. Stat. § 520.090 (Commentary)). This means, in turn, that success on a plaintiff's "Fourth Amendment excessive-force claim would legitimize an affirmative defense on the resisting-arrest charge and thus call into question the validity of the conviction." *Id.* Several other district courts have held the same. *See, e.g., Riggs v. Wright*, No. 3:22-CV-456-RGJ, 2025 WL 2724368, at *6 (W.D. Ky. Sept. 24, 2025) (dismissing Fourth Amendment claim for excessive force where it would undermine the plaintiff's resisting-arrest guilty plea); *Spurlin v. Kromer*, No. 4:21-

---

[4] At the motion-to-dismiss stage, "courts may take judicial notice of facts in a public record that are not subject to reasonable dispute—such as the court's ultimate resolution of a prior case." *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024) (internal quotation omitted).

CV-106-BJB, 2024 WL 4151173, at *2 (W.D. Ky. Sept. 11, 2024) ("In the excessive-force context, *Heck* bars a plaintiff's claim for pre-arrest excessive force when the plaintiff was convicted of resisting arrest[.]").

That rule resolves the issue here. Carpenter pled guilty to resisting arrest, and his excessive-force claim challenges the force preceding his resistance. (Doc. # 18 at 4). Success on the excessive-force claim would necessarily call the guilty plea into question. *Heck* bars that.

Carpenter first attempts to sidestep *Heck* by emphasizing the sequence of events. As he sees it, the conduct underlying his resisting-arrest guilty plea occurred only "after the fact of Newman's excessive force." (Doc. # 18 at 4). But therein lies the rub. "*Heck* bars § 1983 claims resting on allegations of *pre-arrest excessive force*, but not those resting on *post-arrest excessive force*." *Westbrook v. City of Cincinnati*, No. 1:21-CV-476, 2025 WL 437211, at *5 (S.D. Ohio Feb. 7, 2025) (citing *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 611 (6th Cir. 2014)) (emphasis added). And Carpenter alleges just that: Newman used excessive force *before* Carpenter fled and resisted arrest. (Doc. # 18 at 4). If true, that force could have supplied an affirmative defense to resisting arrest. So, the sequence Carpenter relies on does not save his claim.

Nor does Carpenter's reliance on *Ward v. Borders*, No. 3:16-CV-393-RGJ-RSE, 2023 WL 5108598 (W.D. Ky. Aug. 9, 2023) save his claim, either. (Doc. # 18 at 4). *Ward* observed the unremarkable proposition that "use of a taser or pepper spray [is] unreasonable force if [the suspect] was compliant when [the officer] used such on him." 2023 WL 5108598, at *9. But *Ward* did not turn on any application of *Heck*. That distinction matters. *Heck* bars Carpenter's claim at the threshold, leaving no need to

decide whether Newman's alleged use of force was reasonable. *See, e.g., Burke v. Forbis*, No. 3:18-CV-802-DJH-CHL, 2021 WL 2418574, at *3 n.3 (W.D. Ky. June 14, 2021) (noting that, because *Heck* applied, the court need not consider the defendant's alternative argument that his use of force was constitutionally reasonable). *Ward* therefore does not alter the result.

Carpenter, lastly, also points to statements made during his bond hearing, which he contends support his account of Newman's conduct. (Doc. # 18 at 1). For starters, Carpenter cannot "bolster [his] complaint with new allegations in response to a motion to dismiss." *Cotterman v. City of Cincinnati*, No. 21-3659, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023). And in any event, the *Heck* inquiry does not turn on what transpired at the bond hearing. The question is whether success on Carpenter's excessive-force claim would necessarily call his resisting-arrest guilty plea into question. Because it would, *see Capuano*, 2025 WL 223778, at *3, the bond-hearing evidence is not relevant.

Accordingly, because *Heck* bars Carpenter's excessive-force claim, his Fourth Amendment claim against Newman in his individual capacity will therefore be dismissed without prejudice.[5] *See Chaney-Snell v. Young*, 98 F.4th 699, 710 (6th Cir. 2024) ("When *Heck* bars a § 1983 claim against an officer, the court should dismiss the claim *without prejudice*[.]") (emphasis in original).

***2. Official-Capacity Claims***

Carpenter also sues Newman in his official capacity as a Grayson police officer. (Doc # 1 ¶ 4). An official-capacity claim, however, "is not a suit against the official but

---

[5] Because *Heck* resolves Carpenter's Fourth Amendment claim, the Court need not address Newman's alternative arguments that no seizure occurred, that the alleged force was objectively reasonable, or that he is entitled to qualified immunity.

rather a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Carpenter's official-capacity claim against Newman is, in substance, a claim against the City of Grayson. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("An official-capacity claim against a person is essentially a claim against the municipality.").

But "a suit against an individual in an official capacity is only appropriate if the person qualifies as an official policy maker." *Warren v. Lexington-Fayette Urb. Cnty. Gov't*, No. CV 5:16-140-DCR, 2016 WL 4491837, at *4 (E.D. Ky. Aug. 25, 2016). And "resolution of the issue ultimately depends on whether the individual 'had final policymaking authority . . . .'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)) (alteration in original). Carpenter, here, alleges no such thing. Accordingly, Carpenter's official-capacity claim must be dismissed.

**B. State-Law Claims**

Carpenter's remaining claims all arise under Kentucky law and were before this Court pursuant to the Court's supplemental jurisdiction authorized by 28 U.S.C. § 1367(a). (*See* Doc. #1). Having disposed of Carpenter's federal claims—the only basis for subject-matter jurisdiction—the Court declines to exercise supplemental jurisdiction over his remaining state-law claim.

Under 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." In the Sixth Circuit, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed[.]" *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). Indeed, courts

should retain jurisdiction "only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over 'needlessly deciding state law issues.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Nothing about this case overcomes that presumption. This case remains at the pleading stage, and resolving Carpenter's remaining claims would require the Court to decide questions of Kentucky law better left to Kentucky courts. Accordingly, the Court declines to exercise supplemental jurisdiction over Carpenter's state-law claims, and those claims will be dismissed without prejudice.

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's individual-capacity claim against Defendant is **DISMISSED without prejudice**.

(2) Plaintiff's official-capacity claim against Defendant is **DISMISSED without prejudice.**

(3) Plaintiff's state-law claims against Defendant are **DISMISSED without prejudice.**

(4) This matter is **DISMISSED AND STRICKEN** from the Court's active docket; and

(5) An accompanying **JUDGMENT** in favor of Defendant shall be filed contemporaneously herewith.

This 31st day of August, 2026.

**Signed By:**

***David L. Bunning***

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2025\25-63 MOO Re MTD.docx